

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. E. Alvis, Jr.
County Attorney
Coryell County
Gatesville, Texas

Dear Sir:

                    Opinion No. O-1470
                    Re:  Reservation or exception of mineral in-
                         terests in lands after foreclosure as
                         illegal or ultra vires acts of insurance
                         companies or real estate loan agencies.

          We appreciate very much your letter of November 7,
1939, calling our attention to the situation set out in the
portions of your letter to be quoted, and hand you herewith
our opinion on this matter:  We have given very careful con-
sideration to the question involved, with a view toward in-
stituting such action as may be necessary to insure that the
laws of this State, as well as its public policy, are enforced.
See Articles 1364 and 1808, Revised Civil Statutes of Texas,
1925.

          Your letter reads in part as follows:

          "During the past three years a practice has
     grown up among insurance companies and real estate
     loan agencies, not only in this county but also
     over the State, of retaining a part of the mineral
     interests in lands which they have taken over by
     foreclosure or otherwise and subsequently sold at
     private sale.  This practice of reserving mineral
     interests seems to be in wide use with The Federal
     Land Bank, and other corporations with a limited
     purpose or charter have followed suit.  As a re-
     sult of this practice, apparently, wide mineral
     holdings are being built up by corporations which
     were chartered for a different purpose.  In other
     words a number of these corporations are doing a
     big oil business when the same is not necessary,
     incidental or proper in the exercise of their
     true, proper, and chartered functions.

Honorable C. E. Alvis, Jr., Page 2

"It seems to me that such operations are in
violation of Chapter 4, Title 32, Art. 1359, et seq.
of the Revised Civil Statutes of Texas. Further-
more, the traditional policy of the law: that of
the free alienation of land and the interests
therein, does not seem to be well served by the
vast accumulation of such interests by great
corporate organizations.

". . .

"I would like to have your views on this mat-
ter, as I believe it will prove to be of even wider
interest to Texas in the future."

Since we do not have the charter of any specific in-
surance company or real estate loan corporation before us, and
likewise; since we have been furnished with no specific facts
and circumstances relative to the acquisition of any particu-
lar tract of land or the exception or reservation of any cer-
tain mineral interest by any such company, the preparation of
a concrete opinion on the questions presented in your letter
has been difficult; and to a considerable extent that which
follows represents no more than a collation of pertinent
authorities.

We indulge in the assumption that the lands referred
to were lawfully acquired by foreclosure proceedings or other-
wise, either to enable the corporation to carry on its business,
or to secure the payment of indebtedness or liability due, or
belonging to the corporation, or for other lawful purposes.
Then, upon subsequent sale, a mineral interest was "retained";
and we presume that when you speak of such corporations "re-
taining a part of the mineral interests in lands", you refer
to the creation of some such estate as occurred in Way vs. Venus
(C. C. A. 1931), 35 S. W. (2d) 467, or Klein vs. Humble Oil &
Refining Co. (T. C. A. 1934), 67 S. W. (2d) 911, which might
operate as a severance of the mineral estate and reserve a
vested title in some portion of the minerals in the insurance
or real estate loan corporations involved. See Texas Company
vs. Daugherty (1915), 107 Tex. 226, 176 S. W. 717, L. R. A.,
1917F, 989, Stephens County vs. Mid-Kansas Oil & Gas Company
(1923), 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.

In this connection, Chapter 4 of Title 32 of the
Revised Civil Statutes of Texas, 1925, dealing with the pur-

chase and conveyance of lands by corporations generally, is relevant (Article 4715 of the Revised Civil Statutes of 1925 provides that the laws governing corporations in general shall apply to and govern insurance companies incorporated in this State, insofar as the same are not inconsistent with those statutes dealing specifically with insurance companies), and we quote the following Articles from such chapter:

"Article 1359. Conditions of purchase. - No private corporation shall be permitted to purchase any lands under any provision of this chapter, unless the lands so purchased are necessary to enable such corporation to do business in this State, or except where such land is purchased in due course of business to secure the payment of debt."

"Article 1360. Sale of surplus. - All private corporations authorized by the laws of Texas, to do business in this State, whose main purpose is not the acquisition or ownership of lands, which have or may acquire by lease, purchase or otherwise more land than is necessary to enable them to carry on their business, shall, within fifteen years from the date said land may be acquired, in good faith sell and convey in fee simple all lands so acquired which are not necessary for the transaction of their business." (Underscoring ours)

"Article 1361. Liquidation. - Any lands acquired by corporations in payment of debts due such corporations shall be sold and conveyed as herein provided, within fifteen years from the date of the acquisition of such land." (Underscoring ours)

"Article 1362. Corporations prohibited. - No private corporation heretofore or hereafter chartered or created whose main purpose of business is the acquisition or ownership of land by purchase, lease or otherwise, shall hereafter be permitted to acquire any land within this State by purchase, lease or otherwise."

"Article 1364. Escheat proceedings. - All corporations holding lands contrary to the provisions of this law shall hold the same subject

to forfeiture and escheat proceedings. The Attorney General, or any district or county attorney, when either of them has reason to believe that any corporation is holding lands in violation of this law, shall institute suit in the name of the State of Texas, in Travis County, or in any county in Texas where such corporation may have an agent, or in any county where any part of the land may be situated, against such corporation, as is provided for the escheat of estates of deceased persons dying without devise thereof and having no heirs."

"Article 1365. Disposition of penalties. - If it be determined upon the trial of said suit that lands are held contrary to this law, the court trying said cause shall enter judgment condemning such lands and ordering them to be sold as under execution, the proceeds of such sale to be first applied to the payment of costs of such suit, and the balance to be paid into the State Treasury subject to be paid to the stockholders, or persons entitled to receive the same as owners, upon proper proof made within twelve months from date of sale. If the legal representatives of such corporation fail to claim the said balance of money realized on sale of said land, then it shall escheat to the State and be applied to the available school fund. The court trying said cause shall allow the attorney representing the State a reasonable fee, to be taxed as cost in the suit. In no case shall the State be liable for costs or fees unless it is successful in said suit."

The progenitor of these articles was Senate Bill 4, Chapter 38, General Laws of Texas, 1893, 23rd Legislature, Vol. 10, p. 466, Sec. 4, which reads in part as follows:

"Sec. 4. That all private corporations authorized by the laws of Texas, as provided in Chapter 101, Article 566, Acts of 1891, Twenty-second Legislature, to do business in this State, whose main purpose is not the acquisition or ownership of lands, as mentioned in the preceding sections, which have heretofore or may hereafter acquire, by lease, purchase, or otherwise, more land than is necessary to

enable them to carry on their business, <u>shall, within fifteen years from the time this act takes effect, or the date said land may be here- after acquired in good faith sell and convey in fee simple all land so acquired,</u> and which are not necessary for the transaction of their business. And no private corporation shall be permitted to purchase any land under the pro- visions of this and the preceding sections unless the lands so purchased are necessary to enable such corporation to do business in this State, or except where such land is purchased in due course of business to secure the payment of debt.. . ." (Underscoring ours)

We also call your attention to Article 1320, Revised Civil Statutes, 1925, which reads in part as follows:

"Every private corporation as such has power:

". . .

"4. To purchase, hold, sell, mortgage or otherwise convey such real estate and personal estate <u>as the purposes of the corporation shall require,</u> and also to take, <u>hold and convey such other property, real, person or mixed, or (as) shall be requisite for such corporation to ac- quire in order to obtain or secure the payment of any indebtedness or liability due, or belong- ing to, the corporation."</u> (Underscoring ours)*

<u>Article 1349,</u> Revised Civil Statutes, 1925, is also pertinent, and reads in part as follows:

"No corporation, domestic or foreign, doing business in this State, shall employ or use its stock, means, assets or other property, direct- ly or indirectly for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes otherwise per- mitted by law; . . ."

---

*NOTE: The power of acquiring lands is not confined to corporations formed to deal in real estate. City of San Antonio vs. Salvation Army (Civ. App.), 127 S. W. 860, error refused.

Thus, with respect to corporations generally, it may be seen that the Legislature has declared the public policy of the State to be that corporations whose main purpose is or was (at the time of the passage of the Act) the acquisition of land are and were forbidden to acquire land to any extent (see Article 1362, supra), and corporations whose main purpose is not the acquisition of land, may acquire the same only when necessary for business purposes or in due course of business to secure the payment of debt. See Westbrook vs. Missouri-Texas Land & Irrigation Company (C. C. A. 1917), 195 S. W. 1155; Campbell vs. Hood, (Comm. App. 1931) 35 S. W. (2d) 93, 85 A. L. R. 266. It is apparent that the intention of the Legislature as exemplified by the original enactment of 1893 was that in no event should land be purchased by corporations unless these conditions were present, and in its wisdom it further provided for the liquidation of such lands within fifteen years when too much was acquired.

Article 4726 of the Revised Civil Statutes, as amended, deals specifically with life, health and accident insurance companies, and by Article 4819 of the Revised Civil Statutes, Chapter 3 of Title 78 of the Revised Civil Statutes is made applicable to mutual life insurance companies.

We quote Article 4726:

"Every such insurance company may secure, hold, and convey real property only for the following purposes and in the following manner:

"1. One building site and office building for its accommodation in the transaction of its business and for lease and rental; and such office building may be on ground on which the Company owns a lease having not less than fifty years to run from the date of its acquisition by the Company, provided that the Company shall own, or be entitled to the use of, all the improvements thereon, and that the value of such improvements shall at least equal the value of the ground, and shall be not less than twenty times the annual average ground rental payable under such lease; and provided, such office building shall have an annual average net rental of/at least twice such annual ground rental; and, provided, further, that such Company shall be liable for and shall pay all State and local taxes levied and assessed against such ground and the improvements thereon which for purposes of taxation, shall be deemed real estate owned by the Company. Provided, that an acquisition of such

an office building on leased ground shall be
approved by the Board of Insurance Commissioners
of the State of Texas before such investment.

"2. Such as have been acquired in good
faith by way of security for loans previously
contracted or for moneys due.

"3. Such as have been conveyed to it in
the satisfaction of debts previously contracted
in the course of its dealings.

"4. Such as have been purchased at sales
under judgment or decrees of court, or mortgage
or other liens held by such companies.

"All such real property specified in sub-
divisions 2, 3 and 4 of this Article which shall
not be necessary for its accommodation in the
convenient transaction of its business shall be
sold and disposed of within five years after the
Company shall have acquired title to the same,
or within five years after the same shall have
ceased to be necessary for the accommodation of
its business. It shall not hold such property
for a longer period, unless it shall procure a
certificate from the Commissioner that its
interests will suffer materially by the forced
sale thereof; in which event the time for the
sale may be extended to such time as the Com-
missioner shall direct in such certificate."
(Underscoring ours)

Consequently, it may be seen that with respect to life,
health and accident insurance companies, the Legislature has
shortened to five years the period for legal corporate holding,
as set out in Chapter 4 of Title 32 of the Revised Civil
Statutes (Articles 1360-1361).

A further limitation on Articles 1360-1361 of the
Revised Civil Statutes, supra, may be found in Articles 5007
and 5008 of the Revised Civil Statutes, applying to casualty
insurance companies. We quote:

"Art. 5007. No such company shall be per-
mitted to purchase, hold or convey real estate,

Honorable C. E. Alvis, Jr., Page 8

except for the purpose and in the manner herein set forth:

"1. For the erection and maintenance of buildings at least ample and adequate for the transaction of its own business.

"2. Such as shall have been mortgaged to it in good faith for money due.

"3. Such as shall have been conveyed to it in the satisfaction of debts previously contracted in the course of its dealings and which must be taken in by the company on account of the debt secured by such mortgage.

"4. Such as shall have been purchased at sales upon judgments, decrees or mortgages obtained or made for such debts. No company incorporated as aforesaid shall purchase, hold or convey real estate in any other cases or for any other purpose."

"Art. 5008. All real estate so acquired, except as is occupied by buildings used in whole or in part for the accommodation of such companies in the transaction of its business, shall, except as hereinafter provided, be sold and disposed of within ten years after such company shall have acquired title to the same. No such company shall have such real estate for a longer period than that above mentioned, unless the said company shall procure a certificate from the Commissioner that the interests of the company will suffer materially by a forced sale of such real estate, in which event the time for the sale may be extended to such time as the Commissioner shall direct in said certificate." (Underscoring ours)

Likewise, a special statute has been enacted with respect to building and loan associations, Article 881a-26 of the Revised Civil Statutes of 1925, which reads in part as follows:

"Every parcel of real estate acquired by any such association shall be sold by it within five years of the date on which it shall have

Honorable C. K. Alvis, Jr., Page 9

> been acquired unless (a) there shall be a build-
> ing thereon occupied by it as an office; or (b)
> the Banking Commissioner of Texas on application
> of the board of directors shall have extended
> the time within which such sale shall be made.
> . . ." (Underscoring ours)

The facts set forth in your letter are not in them-
selves sufficient to present a situation falling within the
purview of Articles 1349, 881a-14, 4621, or 4999, Revised
Civil Statutes, 1925, so as to enable the Attorney General to
forfeit the charter of such corporation. Westbrook vs.
Missouri-Texas Land & Irrigation Co. (C. A. A. 1917), 195 S. W.
1154; Alamo Club vs. The State (C. C. A.), 147 S. W. 639,
writ refused; Union Men's Fraternal & Beneficiary Ass'n vs.
The State (C. C. A.), 190 S. W. 242; Kaplan Dry Goods Co. vs.
Sanger Bros. (C. C. A.), 214 S. W. 485; 10 Tex. Juris. para.
239, p. 870.

Nor do we believe the questions set forth in your
letter contemplate a situation in which the land was originally
illegally acquired, so as to enable the Attorney General to
restrain the corporation from acquiring more land or violat-
ing the legislative mandate as set forth in Article 1359 of
the Revised Civil Statutes of Texas, supra. Staacke vs. Rout-
ledge (Sup. Ct., 1922), 241 S. W. 995; Jackson vs. Western
Union Telegraph Company, 269 Fed. 598; National Equitable
Society, et al vs. Alexander, et al (C. C. A. 1918), 220 S . W.
184; Campbell vs. Hood (Com. App. 1931) 35 S. W. (2d) 93,
85 A. L. R. 266; City of Wink vs. Griffith Amusement Co.
(Sup. Ct.) 100 S. W. (2d) 695.

As regrettable as it may be that the Legislature
has not provided a more summary remedy for the situation des-
cribed in your letter, we believe that it has at least pro-
vided a complete and exclusive one in Chapter 4 of Title 32
of the Revised Civil Statutes, which forms a part of the laws
against the creation of perpetuities. American Tribune News
Colony Co. vs. Schuler, 34 C. A. 560, 79 S. W. 375.

As stated in Schneider vs. Sellers, 98 Tex. 380,
84 S. W. 417, at page 420:

> "Under the present law of this state, enacted
> March 24, 1893, the corporation had 15 years from
> the passage of the law (and as the statute now
> reads, 15 years from the acquisition of the land)

Honorable C. E. Alvis, Jr., Page 10

to sell the land, and the time has not yet ex-
pired. Rev. St. 1895, art. 749c. If the State
should secure a declaration of forfeiture, the
lands would be sold, and the proceeds distri-
buted to the stockholders. Revised Statutes
1895, Article 749e. This shows that the holding
of the land is not unlawful." (Parenthetical
insertion ours)

Consequently, you are respectfully advised and it is
the considered opinion of this department that under the facts
set out in your letter of November 7, 1939, and those addi-
tional facts assumed in this opinion, insurance companies and
real estate loan corporations (with the exception of the
special corporations mentioned in the paragraphs to follow),
retaining a mineral interest in lands which they have origi-
nally, lawfully acquired by foreclosure or otherwise, and
subsequently sold at private sale, may hold such lands or
retain such interests for a period of 15 years from the date
of original acquisition of such lands in accordance with
Articles 1360 and 1361 of the Revised Civil Statutes, before
being subject to forfeiture and escheat proceedings instituted
by the Attorney General of Texas as provided in Article 1364
of the Revised Civil Statutes of 1925.

With respect to life, health and accident insurance
companies, you are respectfully advised that such corporations
have five years in which to dispose of real estate not necessary
in the convenient transaction of business, without an extension
of time granted by the Commissioner of Insurance.

Moreover, it is the opinion of this Department that
general casualty insurance companies have ten years in which
to dispose of real estate not necessary in the convenient
transaction of business, unless granted an extension of time
by the Commissioner of Insurance.

It is the further opinion of this department that
building and loan associations must dispose of every parcel
of real estate acquired by such associations within five years,
unless granted an extension of time by the Banking Commissioner
of Texas.

We shall be glad to furnish a more specific opinion
if you will furnish this department information as to the
particular type of corporation and the articles of the Revised
Civil Statutes under which it was incorporated, and in addi-

Honorable C. E. Alvis, Jr., Page 11

tion all facts and circumstances relative to the acquisition of any particular piece of land and the retention of the mineral interest.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Walter R T Koch*
Walter R. Koch
Assistant

By *James D. Smullen*
James D. Smullen

JDS:CO

APPROVED DEC 18, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

